1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            LAREDO DIVISION

4   IIIPG ENTERPRISES INC., ET AL §     CASE NO. 5:15-CV-00029
                                  §     LAREDO, TEXAS
5   VERSUS                        §     MONDAY,
                                  §     APRIL 27, 2015
6   CITY OF LAREDO, ET AL         §     9:39 A.M. TO 10:54 A.M.

7

                              MOTIONS HEARING
8
                  BEFORE THE HONORABLE J. SCOTT HACKER
9                     UNITED STATES DISTRICT JUDGE

10

11                            APPEARANCES:

12       FOR PLAINTIFF/DEFENDANT:    SEE NEXT PAGE

13       COURT RECORDER:             BEN MENDOZA

14       COURT CLERK:                DEBBIE FLORES

15

16

17

18

19

20                    TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 ELDRIDGE ROAD, #144
22                 SUGAR LAND, TEXAS 77478
           Tel: 281-277-5325 ▼ Fax: 281-277-0946
23                www.judicialtranscribers.com

24

       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                          APPEARANCES:

2

3   FOR THE PLAINTIFF:        Maria Elena Morales, Esq.
                              1514 Victoria, Ste. 1
4                             Laredo, TX  78046

5
                              LAW OFFICE OF MARILU CANTU, PLLC
6                             Marilu Cantu, Esq.
                              1919 Chihuahua
7                             Laredo, TX  78043

8

9   FOR THE DEFENDANT:        DENTON NAVARRO
                              Elizabeth Guerrero-Southard, Esq.
10                            2517 North Main Avenue
                              San Antonio, TX  78212
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>INDEX</u>

2

3

4   <u>EXHIBITS</u>:                    <u>Marked</u>     <u>Offered</u>     <u>Received</u>

5   Defense Exhibit 1              53

6   Defense Exhibit 2              22

7   Defense Exhibit 3              36

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        <u>LAREDO, TEXAS; MONDAY, APRIL 27, 2015; 9:39 A.M.</u>

2        THE COURT: All right, we're here on Case Number

3  15-CV-29, IIIPG Enterprises Incorporated, et al versus City

4  of Laredo.

5        Could we please get announcements for the Record?

6        MS. MORALES:  Maria Elan Morales, Your Honor, and

7  Marilu Cantu for the Plaintiffs --

8        THE COURT:  All right.

9        MS. MORALES:  -- IIIPG and PedroPete and

10  Mr. Sanchez.

11        MS. GUERRERO-SOUTHARD:  Elizabeth Guerrero-

12  Southard on behalf all the Defendants, the City of Laredo

13  and the individual Council Members.

14        THE COURT:  All right.  I just had some questions

15  for you this morning to kind of help me get through this so

16  I can get a ruling out.

17        Let me ask the Plaintiffs -- and I don't know,

18  Ms. Morales are you answering the questions or Ms. Cantu or

19  how do you want to do this?

20        MS. CANTU:  Ms. Morales --

21        MS. MORALES:  I will answer, Your Honor.

22        THE COURT:  All right.

23        MS. MORALES:  I might, from time-to-time, might

24  have to ask her something.

25        THE COURT:  That's fine.  I've got some general

1  questions for regarding your clients, exactly what

2  recyclables are they hauling in these loads?  I assume that

3  they're picking up construction debris, but then you

4  classify that also as recycling, which seems to be different

5  than what is defined through the Municipal Code for

6  recyclables under the program.

7          MS. MORALES:  For example, Your Honor, Mr. --

8  IIIPG, Mr. Gonzalez was hired recently by the Laredo

9  Independent School District to demolish all the homes that

10  they purchased to expand the Nixon High School complex.

11          So that in --

12          THE COURT:  Over on Bartlett?

13          MS. MORALES:  Over on Bartlett.

14          -- so all of those homes obviously contained some

15  recyclable materials such as copper-type lines that were

16  used in the gas, the water in those homes.  Those are the

17  kind of recyclable materials that Mr. Gonzalez would find

18  when he does his demolition.

19          In other words, his contract states that when he

20  demolishes all these properties, these homes, whatever

21  recyclables he finds, he's allowed to keep and he sells to

22  third parties.  Those are the type of recyclable materials.

23          Now PedroPete and Mr. Sanchez, dba Visa what they

24  do is they contract to put the containers in the demolition

25  sights and so those might contain also those type of

1    materials.

2              THE COURT:  What type of material?

3              MS. MORALES:  Whatever is in the old buildings,

4    recyclables.

5              THE COURT:  Okay.

6              MS. MORALES:  So those are the type -- that's the

7    type of business they're in and those are the type of

8    recyclable materials that they might find.  As opposed to

9    soda cans and --

10             THE COURT:  Plastics.

11             MS. MORALES:  -- plastics.  There could be some

12   there, but that's mainly their business.  Their business is

13   in the business of demolishing --

14             THE COURT:  It is somewhat minute compared to the

15   overall load, correct?

16             MS. MORALES:  Oh, yes.  When you demolish the

17   buildings, you could find a lot of recyclable materials.

18             THE COURT:  So how does their Municipal Code --

19   how does it force the company to give up recyclable material

20   by obtaining a franchise or dispose of all materials?

21             MS. MORALES:  Well because you have to take them

22   to the City landfill.  It's no longer theirs.

23             THE COURT:  You mean, they're required -- they

24   can't take out the copper --

25             MS. MORALES:  Mr. Gonzalez, for example, would

1  have to take everything that he finds in the demolishing of

2  those buildings to the landfill.

3           THE COURT:  He can't take it out and resell it?

4           MS. MORALES:  No, not according to the Ordinance.

5           THE COURT:  Okay.  Defendants do you need to

6  comment on that?  I'm just curious how that works.

7           MS. GUERRERO-SOUTHARD:  Your Honor, they're

8  attacking the amended Ordinance which deals solely with

9  recycling.  It defines what recycling is and gives examples

10  of plastic bottles, plastic jugs, detergent containers,

11  aluminum cans.  Not the information that Plaintiff is

12  suggesting.  Those are matter -- construction and demolish

13  waste has been a part of the City's Ordinance for many years

14  prior to 2013.

15           And they've been notified because they received

16  request to those franchised.  So they can take -- if they're

17  demolishing, they're considered self-haulers when they go to

18  a landfill.   That's different than you putting containers

19  out there and making it a commercial stop.

20           THE COURT:  But one of her clients is a

21  self-hauler.

22           MS. GUERRERO-SOUTHARD:  One of them is

23  self-hauling.

24           THE COURT:  Okay.

25           MS. GUERRERO-SOUTHARD:  But nobody says we have to

1  take all your stuff to the landfill.  They're trying to get

2  the landfill and we're saying you can't get to the landfill

3  unless you have a Franchise Agreement because you're using

4  our streets and thorough ways to conduct your business.

5  That's what the City is saying.

6            They're required to take certain items to

7  designated landfills, that's correct.

8            But am I incorrect in saying they can take their -

9  - whatever they consider copper and take it somewhere else?

10            MR. GEISS:  No, they can take that -- there's no -

11  - there's nothing to make them take that to the City

12  landfill.

13            THE COURT:  Ms. Morales, that's how I -- my

14  understanding of it, but I could be misinformed.  But it

15  doesn't -- I don't see anything that keeps your clients from

16  taking out recyclables that they want to take out and do

17  whatever they want to with it and still go to the landfill

18  with that other part of the load.

19            MS. MORALES:  The Ordinance specifically states

20  that it's all materials, Your Honor.

21            THE COURT:  Well do you have a response to that?

22            MS. GUERRERO-SOUTHARD:  Your Honor, they can point

23  to whatever section of the Ordinance they're referring to

24  and we can address that.

25            MS. MORALES:  I think, Your Honor, that the

1  problem for us is -- I mean, we can get bogged down the

2  definitions and what they can and can't do.  Our main

3  complaint is that there's a City Charter that says that

4  they're only going to -- that the City of Laredo is

5  authorized to require -- to require these franchises from

6  public utilities.

7          THE COURT:  Okay.

8          MS. MORALES:  Plaintiffs are not public utilities.

9          THE COURT:  All right.

10         MS. MORALES:  And not only are they not public --

11 I mean, we look at the definition under State law as to what

12 is the public utility and we have several situations where,

13 I mean, we have several definitions in the State statute and

14 we've outlined them in our responses, Your Honor, but

15 basically --

16         THE COURT:  Well say I -- I think that's a pretty

17 easy argument.  I mean, I understand that.  But say I get

18 past that and I've got to address the other ones.  I'm

19 trying to see how this works out and how it kind of blends

20 together.

21         MS. MORALES:  Well, there's some additional that

22 they themselves -- the Defendants themselves cite a

23 definition -- I mean, a section of the Code that

24 specifically excludes in the Code.

25         Let's say you that you say get past that and

1   they're able to prevail that they have the authority to do

2   that and we get past the definition of, you know, why can't

3   they just subtract -- I mean, retract whatever is?  There is

4   an exception to that requirement, Your Honor, in that in

5   Section -- Administrative Code Section 230, Section

6   Subsection (33) -- which they themselves quote in their

7   response to our Motion for Injunctive Relief.

8           And says that -- and I will tell you exactly what

9   the section says, Your Honor.  It excludes -- and this is

10  the section that talks about solid waste disposal services

11  fees.

12          THE COURT:  All right.

13          MS. MORALES:  And it says at the very end of

14  subsection (h):

15     "This section does apply to a private entity that

16     contracts to provide temporary solid waste disposal

17     service to a construction project."

18          Assuming that the solid waste includes

19  recyclables, which our contention that it does not include

20  recyclables.  This is not a case where we're saying the City

21  cannot regulate the disposal of solid waste.

22          We're saying what we do is not considered solid

23  waste under State statute, under any definition and then it

24  specifically excludes private entities that a contractor

25  provides solid waste disposal even if the Court were to say

1  well, I'm not going to be mincing words here and solid waste

2  does include construction and demolition waste.  Then we're

3  specifically excluded from those regulations.

4         In other words, we -- what we do, Your Honor, is

5  we say we're going to demolish this building; it's a

6  temporary thing.  We go out there, we demolish it, we put

7  the construction and demolition waste in containers and we

8  take it out to the landfill, which we've been doing for

9  years and years.

10         THE COURT:  Okay.

11         MS. MORALES:  This Ordinance was passed in 2013

12  and it's kind of a misleading to say that we've been on

13  notice of this.  There were several attempts in the past to

14  regulate it by a franchise and they were unsuccessful.

15         And if we look at the 2005 Ordinance itself, the

16  City itself says:

17     "This Ordinance is in compliance with Section 8 of our

18     City Charter," which it's not.

19         But they themselves have to make a finding that it

20  does comply with their own Charter because the Charter is

21  the Constitution for the City of Laredo.  And we're saying

22  that even if we get passed all that, we're still exempt.

23         THE COURT:  All right, Ms. Guerrero?

24         MS. GUERRERO-SOUTHARD:  Certainly, Your Honor.  I

25  think she's touched on several things.  I'm going to try to

1  discuss those matters.

2          One, she is pointing to the City Charter,

3  Section 8.  And they're saying that we are prevented somehow

4  -- the City is prevented somehow from issuing Franchise

5  Agreements to anything other than a public utility.

6          May I give a copy of the Charter provision to the

7  Court for reference?

8          THE COURT:  Please.

9          MS. GUERRERO-SOUTHARD:  And Your Honor, may I

10 please also give a folder that I have prepared.  I know you

11 have specific questions, but just in case I have some of the

12 case law that I'm going to point to.

13         But to start with, they're contention is that City

14 Charter prevents us from issuing Franchise Agreements to

15 anything other than public utility.

16         We look at 8.2, the reading says:

17     "That Counsel shall have the power by Ordinance to

18     grant and renew and extend all franchise of all public

19     utilities."  Not to all public utilities.  There's a

20     distinction.

21         Case law provides that a City can require

22 franchise licenses for the use of their streets, their

23 thoroughfares and their alleys in conjunction with a utility

24 companies or other entities that are utilizing those streets

25 to conduct their businesses.  Nothing in this Charter

1    prohibits that, so that is, you know, the first point on all

2    public utilities.

3           With respect to -- with respect -- and to address

4    the issue, I think the way the Plaintiffs have this case it

5    brings forth an individual who's claiming that they conduct

6    demolition services and then they haul their own stuff.

7           And then you have two other individuals that what

8    they really do is put out these containers out and

9    establishments can bring in their waste and then they

10   transport, so to speak, that waste.

11          There's a distinction because Plaintiff's Counsel

12   is correct only in respect to when it deals with demolition,

13   you have your own way, you demolish and you're going to haul

14   that waste and "you demolish," that's different than what

15   the solid waste Ordinance and the Recycling Ordinance are

16   attempting to address.  Because that's what they call

17   "self-hauler."  You're hauling your own, in essence, waste

18   because you've demolished it.

19          There is nothing precluding -- and they've been

20   doing this as Plaintiffs suggest -- for years.  The problem

21   was and where this became a problem is that it was noted by

22   several City managers and officials that what Plaintiffs

23   were really trying to do is take other people's waste, not

24   the ones they demolished.

25          And they had a website that, you know, said we

1   pick up and transport, you know, garbage and waste.  And

2   there's a difference.  When you do that and you use the City

3   streets and thorough ways, then you have to have a Franchise

4   Agreement.  And there's nothing in any statutory provision

5   that says, "City, you cannot regulate that; City, you cannot

6   regulate recycling; City, you cannot require, you know,

7   you're not allowed to require Franchise Agreements."

8             Quite the contrary.  The statutory provisions

9   state that a City can regulate solid waste -- am I going too

10  far, Your Honor?

11            THE COURT:  No, no, keep going.

12            MS. GUERRERO-SOUTHARD:  Okay.  They can regulate

13  solid waste; they can require that they come to certain

14  landfills; they can require that they can issue Franchise

15  Agreements.  In fact, the case law provide -- as cited in

16  our responses -- that they can even do it to an exclusive

17  person.

18            That's not what the City is trying to do.  They've

19  told -- ample opportunities, look just get a Franchise

20  Agreement.  Once you get the franchise, just like these

21  other two entities, you can come into our landfill.  They're

22  not contending they're trying to go to the recycling fill

23  and that we're -- the recycling facility and we're

24  precluding them from doing so.  They're saying we want into

25  your landfill and we want to into your landfill had been an

1 Ordinance that had been in existence since for a long time

2 requiring this franchise license, not just 2013.

3         The only -- the only provision that 2013 provides

4 for is that it says now also we want to apply to this

5 recycling.  And it's clear on the Ordinance where they add

6 the term recyclables and they add with respect to

7 recyclables we want you to use the recycling facility.  It's

8 not what they're contending.

9         THE COURT:  Does the 2013 Ordinance include the

10 fine for the first time?

11         MS. GUERRERO-SOUTHARD:  Yes.  No, no, no, I'm

12 sorry.  No, no, Your Honor.  The fine has been in place for

13 quite sometime.  But now the fine is attached to recycling

14 also.  Does that clarify?

15         THE COURT:  Let me ask you this.  Ms. Morales said

16 that IIIGP [sic] or -- that's my dyslexic thing -- that's my

17 dyslexia I have going on up here.  But IIIPG that like a

18 contract to tear down the homes at Bartlett and then take

19 them to the landfill, you said that that's -- if they're

20 doing it, they're self-haulers.  It doesn't -- they don't

21 come in under the Ordinance?

22         MS. GUERRERO-SOUTHARD:  That's correct.

23         THE COURT:  Okay.  So when they get to the

24 landfill, how can you know if they're self-haulers versus

25 the side business that they're advertising on the internet

1  that you said you could go and see?

2          MS. GUERRERO-SOUTHARD:  That's the information

3  that was provided during the occurrence of the -- tried to

4  come in, Your Honor.  They tried to come into a landfill.

5  They are asked and generally the City has been very gracious

6  to say is this self-hauling and it has allowed people to

7  come in when they attest that they're self-hauling.  I

8  believe that information came to Mr. Geiss (phonetic) and

9  through testimony we can show that they received information

10 that that particular instance it wasn't a self-haul.

11         THE COURT:  Okay.

12         MS. GUERRERO-SOUTHARD:  And that it's been going

13 on for a while.  This is not a one instance or one

14 occurrence.

15         And if they can prove that, you know, they can

16 take documents in, look I was, you know, I have a contract

17 saying here that I demolish or something to that effect, I'm

18 certain that they would consider that.

19         THE COURT:  Ms. Morales, do you have any comments

20 on that?

21         MS. MORALES:  Well I have several comments, Your

22 Honor.  I guess I don't know how to read the Court -- the

23 Charter because that's exactly what it says.

24         Of course, they can do it by Ordinance.  So as a

25 matter of fact the Ordinance that's what they do.  They

1   enact an Ordinance that says we're granting a franchise, but

2   it says to all public utilities.

3           I don't know how they get around that.  I don't

4   know -- it could have said something else.  Other City

5   Charters say something else.  But not the City of Laredo.

6   And so for them to say we require -- they're trying to

7   regulate the, you know, the solid waste and the disposal of

8   it.  There's no question.  But that's not what we're

9   questioning.

10          In other words, they're entitled to tell us, "Hey,

11  we're going to give this bins and you're going to put your

12  trash in there; you're going to put it on the street and

13  we're going to charge you $7.00 and we're going to take it

14  to the landfill."  Of course they're entitled to do that.

15          There are situations, Your Honor, where the Cities

16  don't have that ability, for example the City of El Cenizo

17  and them they don't have their own and there's other

18  subdivisions in San Antonio that they are not part of the

19  City, so they contract with private entities to do that.  To

20  do that which the City is authorized to do.

21          And some of these people that have the franchise,

22  that's what they do in lieu of me putting my trash out in my

23  building, in my office here I have a choice.  I can contract

24  with TrashGo or with Southern Sanitation to get one of their

25  dumpsters and I put my trash in there and it goes to the

1    City landfill.

2           That's what we're talking about -- about their

3    right to regulate that.  Of course they can, and they're

4    entitled to do that.  This is not what our business is

5    about.  And it is not true that we don't -- we don't do what

6    Southern Sanitation does; we don't take the place of the

7    City of Laredo because the City of Laredo is not in the

8    business of contracting to carry out your demolition and

9    construction waste.  And there's why there's a definition

10   for demolition and construction waste in the Code.

11   Otherwise, there's no reason for it to be there.

12          And there's no reason for there to be a definition

13   for solid waste -- which clearly the City is entitled to

14   regulate.  That's not what this case is about.

15          What we're saying is, "City of Laredo, you're not

16   in the business of making contracts with any construction

17   company, anybody that wants to demolish their buildings and

18   haul that demolition and construction waste.  You're not in

19   that business.  You're not entitled to a franchise based on

20   that."

21          I don't know what would happen if the City's

22   Charter would say that.  All I'm saying at this point,

23   that's not what the City Charter authorizes you to do.

24   You're not in the business of doing that.  We're in the

25   business of doing that, and we are entitled to go to the

1   City landfill and get rid of our demolition construction

2   waste.  And you're interfering with our business.  You're

3   not letting us in.

4          And it is not true that he's not -- that IIIPG has

5   not been allowed to go.  They've known for years.  He has

6   number with the City.  In other words, he doesn't have to

7   pay every time he goes in.  He has a number that they give

8   you and they bill you for it.  He knows he has to pay for

9   that service.  That's the business we're in.

10          We're not in the business of collecting

11   citizen's -- and in their own brief they keep talking about

12   contract to collect the citizen's trash and all that and

13   solid waste.  Yeah, we agree with that.  You can regulate

14   that.  That's not what this case is about.

15          And so, Your Honor, if you look at the home-rule

16   and what they're supposed to do and if they follow their own

17   Charter, they're not supposed to be requiring -- they were

18   not supposed to pass an Ordinance that says that.

19          As a matter of fact, a 2005 Ordinance that makes

20   reference to Section -- Article 8 talks about haulers.  In

21   other words, there's a distinction.

22          THE COURT:  But doesn't that Ordinance just seem

23   like that's what the City is trying bring, the self-haulers

24   that are -- they're saying is not under the current

25   Municipal Code that they're just trying to bring in that

1  category of haulers into the franchise fee?

2          MS. MORALES:  Yeah, but that's not what the

3  franchise is.  We're not taking the place of the City and

4  hauling construction and demolition.

5          In other words, the City provides a service to

6  pick up your trash.  That is part of what the City does.  We

7  don't do that.  They're not contracting with us through a

8  franchise to do that.  We have private contracts.  We go to

9  individuals who are contractors.  I'm going to build

10 something; I'm going to demolish something.  Okay, here --

11         THE COURT:  But doesn't that demolition become

12 trash?

13         MS. MORALES:  No, Your Honor, not under -- not

14 under --

15         THE COURT:  Because you're going to dispose it,

16 right?

17         MS. MORALES:  -- not under the Code, no.  There's

18 a definition for that.

19         MS. GUERRERO-SOUTHARD:  They're trying to come

20 into the landfill.

21         MS. MORALES:  And you have the right to charge us

22 and they have been charging us.  They have a right to charge

23 us and they could even impose a hauler permit fee.

24 Franchise fees and service fees we're -- you know, we're

25 playing with words that don't mean the same thing.  What I'm

1  saying is --

2        THE COURT:  Well I agree and it sounds like both

3  sides are going it.  For example, you say that basically --

4  you basically say that every -- that you're loads are

5  recyclables when you're using a different definition for

6  recyclable than what the City is using, right?

7        MS. MORALES:  Yeah, because we're going by the

8  Texas Safety Code.

9        MS. GUERRERO-SOUTHARD:  They're not trying to get

10  into our recycling facilities.

11        MS. MORALES:  That's what --

12        MS. GUERRERO-SOUTHARD:  They're trying to get into

13  our landfills.  And that's the question.  And the Code of

14  Ordinance does give you -- does include on refuse the

15  definition of construction and waste.

16        May I present it to the Court?

17        THE COURT:  Sure.

18        MS. GUERRERO-SOUTHARD:  It has been a part of

19  this, if you look --

20        THE COURT:  Did you make her a copy?

21        MS. GUERRERO-SOUTHARD:  Yes, yes.

22        THE COURT:  Why don't you, when you mark this

23  write down 1 and 2?  And we'll put them in as Exhibits.

24        MS. GUERRERO-SOUTHARD:  Okay, I didn't know if we

25  were starting already entering Exhibits?

1          THE COURT:  Well, you can.  I mean, just whatever

2    you want.

3          MS. GUERRERO-SOUTHARD:  Can we mark this as

4    Exhibit 2?

5          THE COURT:  Go ahead, I'll let you do that.

6          MS. GUERRERO-SOUTHARD:  Thank you, Your Honor.

7       (Defense Exhibit 2 marked for identification.)

8          THE COURT:  I already have one.

9          MS. GUERRERO-SOUTHARD:  Okay.  On Exhibit 2, Your

10   Honor and this is --

11         THE COURT:  I'm just -- in fact I'm just trying to

12   get enough background.  I'll give each side ample time to

13   argue anything they want to in the motions.  It's just I'm

14   trying to get up to speed where I have a thorough

15   understanding of what's going on, so that I can listen to

16   what you're saying and, you know, take heed to it, so to

17   speak.

18         MS. GUERRERO-SOUTHARD:  And I appreciate that,

19   Your Honor.

20         THE COURT:  Go ahead.

21         MS. GUERRERO-SOUTHARD:  This Chapter 14, which

22   covers garbage, trash and refuse.  And the original -- not,

23   I can't say original because it was amended from other

24   Ordinances, but, you know, prior to the 2013, it has

25   definitions, Your Honor.  On rubbish -- which is the page 2,

1    very end and page 3, it encompasses construction and

2    demolition waste as part of rubbish.

3          So if you want to come into the City's facilities

4    with rubbish -- including construction and demolition

5    waste -- that is not a self-hauler, that is something that

6    somebody else demolishes, you go pick up the waste, you

7    bring it forward.  Then in order to transport that in our

8    streets, you have to have a Franchise Agreement.  And that's

9    been the law prior to 2013, as evidenced here in the Code of

10   Ordinances that require Franchise Agreements.

11         They were entering into the landfill before

12   because they were telling the City, we're self-hauling.

13   We're doing this, we demolish, we self-haul.  They believe

14   that.

15         THE COURT:  That or they just weren't -- you

16   weren't enforcing it well at the time.

17         MS. GUERRERO-SOUTHARD:  No, they were saying that

18   they were self-hauling.  So there is a fee for putting waste

19   in the landfills.  So that's separate and apart from a

20   franchise that says if you're going to be conducting this as

21   a business using our streets and thorough ways, you need to

22   have a Franchise Agreement.

23         So again, just to point out, the Plaintiffs have

24   two components.  One point of that is a construction and

25   demolition business and then the two other that just simply

1  put their trucks out there and collect and transport.

2          I'm trying to clarify the differences, Your Honor,

3  and establish that this wasn't something that was just

4  related to recyclables and they're attacking the Ordinance

5  that is regarding recyclables that was amended in 2013.

6  That's what they're attacking.  And they're not trying to

7  enter into our facilities for recycling.  They're trying to

8  enter into our landfills.

9          THE COURT:  Ms. Morales, Ms. Cantu.

10          MS. CANTU:  Can I answer that?

11          THE COURT:  Go ahead.

12          MS. CANTU:  Just to clarify that point.  We're not

13  only attacking the recyclables.  The franchise -- the plain

14  language of the franchise states -- and it itemizes --

15  garbage, trash or recyclable materials.  That's what we're

16  fighting.

17          Construction and demolition waste has its own

18  definition by the plain language of the Ordinance.  It also

19  states that once you get a franchise, you are only supposed

20  to take out of those materials, garbage, trash and

21  recyclable materials, to the City landfill or whatever

22  sanitary landfill they designate.

23          However, they're not making the point that even

24  though they only itemize those things as -- for the

25  definitions and they have their own definitions, but in the

1  plain language of the Ordinance, it states that they are

2  going by the definitions of the Texas Administrative Code,

3  Section 330.3.

4         Those definitions conflict with the definitions

5  that the City is posting in Ordinance.  And that's what

6  we're alleging.  That's what we're attacking.

7         They don't match.  And recyclable materials, as

8  the City is defining, includes metals.  That includes the

9  copper that our clients get from the demolition projects.

10  That is if they get a franchise they are -- by the Ordinance

11  -- they have to take it to the City landfill or there's the

12  recovery operations.

13         THE COURT:  Okay, Ms. Guerrero?

14         MS. GUERRERO-SOUTHARD:  Now they're attacking the

15  whole Ordinance.  Okay, though we're here on a Preliminary

16  Injunction based on their efforts to enjoin the City from

17  enforcing the 2013 amended portion of the Ordinance dealing

18  with recycling.

19         We can address the other matters.  We can point at

20  you case law that provides that the City can regulate solid

21  waste, it can issue even exclusive Franchise Agreements, but

22  the way they're attacking it is saying, "You're violating

23  the Sherman Act because you're trying to monopolize" and

24  there's various case precedence that says you can even issue

25  an exclusive Franchise Agreement for what now they're

1  asserting, they're attacking which is the solid waste

2  portion of this that encompasses construction and

3  demolition.

4          There's no violation of the Sherman Act because

5  they're -- this is not just the City saying only we can do

6  this.  They're just saying if you want to do it, get a

7  Franchise Agreement.  Two other people have complied.

8          THE COURT:  Let me ask, Ms. Morales, how do you

9  get around the interstate commerce element of that, of the

10  Sherman Act?

11          MS. CANTU:  Your Honor, I believe that we just --

12  we mentioned that in our brief.  Let me get that section.

13          Under Section 2 of the Sherman Act, Your Honor,

14  the Plaintiffs have to show two elements.  One is the

15  possession of the monopoly power in the ready market and two

16  the local acquisition of maintenance of that power as it

17  stems from growth or development as the consequence of the

18  superior court business document or historic taxes.

19          That means that the City, like I already mentioned

20  earlier, by the plain language of the Ordinance, they're

21  saying that all recyclable materials have to go to their

22  designated facilities.

23          So they have the power of monopoly because that

24  means that everyone -- and that's the plain language of the

25  Ordinance.  It says every person that for a fee transports

1 somebody else's garbage, trash, or recyclable materials have

2 to take it to the landfill or the recovery facilities.

3          THE COURT:  So you're saying there doesn't have to

4 be an interstate commerce nexus there that affects outside?

5          MS. CANTU:  Not according to Section 2 of the

6 Sherman Act.  To my understanding, Your Honor, the Section 2

7 of the Sherman Act, that particular section only has those

8 two requirements.

9          THE COURT:  All right.  City?

10          MS. GUERRERO-SOUTHARD:  They're all City of Laredo

11 entities, from what I gather from their pleadings and I

12 don't know how that affects interstate commerce.  Again,

13 there's cases that I pointed to where even the control -- if

14 it was an exclusive franchise requirement, Your Honor --

15          THE COURT:  You don't have to show just the

16 individual Plaintiff's affect the interstate.  Don't you

17 have to show the activity?

18          MS. GUERRERO-SOUTHARD:  Affects them -- oh, but

19 how is it by us requiring Franchise Agreement that it

20 affects interstate commerce?  Anybody from out of state can

21 come and say, "You know what, Laredo, we want to be

22 transporting into your landfill."  And so you just have to

23 comply with the Ordinance like two other entities have been

24 doing since 1996.  Then just go get a Franchise Agreement.

25          It's an application, Your Honor, that you put

1    forth.  It's considered by the City Council, not by an

2    individual director or anything.  They're the ones that

3    consider, "Okay, we're going to grant you a franchise."

4           It's not an exclusive franchise like other cities

5    have.  So how is there a monopoly?  When we're saying, okay,

6    everybody that wants to do it, can do it.  Just get a

7    franchise.

8           And by their own testimony and their own evidence,

9    there's two other entities that are doing this.  It's not

10   just the City, it's not the City.

11          THE COURT:  Ms. Cantu, do you want to say

12   something?

13          MS. CANTU:  Well yes, Your Honor.  There are two

14   other entities that are doing what the Ordinance says, but

15   those companies deal mainly with garbage and trash, which is

16   completely different from what our companies are doing; what

17   our clients are doing.  They are into the construction and

18   demolition and waste collection.

19          They don't deal with garbage.  They don't deal

20   with trash as those items are defined in the Texas

21   Administrative Code, Section 330.  So there's a distinction.

22          THE COURT:  Let me ask you, Ms. Cantu or

23   Ms. Morales, you know, you're asserting equal protection

24   claim also.  Who are the others that are similarly situated

25   with you that are being treated differently?

1          MS. CANTU:  We were just citing to affected

2   clients, Your Honor, IIIPG, Mario Sanchez and PedroPete

3   Services.  In the case that I've cited, the *Village of*

4   *Wilbrook (*phonetic*)*, in that case, the City passed an

5   Ordinance -- well, it was about lots and they had to -- in

6   order to get services in the lots, 15 -- I believe it was 15

7   -- I don't remember the -- it was a particular that they had

8   to do.  Everybody else was allotted 15 meters or acres -- I

9   don't know what it was -- and the City was about to go in

10  and they would put in the services.

11         However, the Plaintiff, the *Village of Wilbrook*,

12  she had more than -- she had 30 acres or something like that

13  and the City demanded that she needed -- I'm confusing this,

14  I'm so sorry.

15         THE COURT:  That's okay, go ahead.

16         MS. CANTU:  The point is that the City demanded

17  more of her while the others they had less than her and they

18  were still able to get the services.  But because she had

19  more, the City would not grant her services.

20         So the court stated in that case that because they

21  were making -- they were making -- I don't know what it's

22  called.  They were giving her a greater burden than the

23  others, that she was eligible for the equal protection.

24         THE COURT:  I'm trying to figure out who is being

25  treated differently in your argument.  Is there's someone

1   that's either hauling construction debris that's not paying

2   his franchisee fee that they're letting in?  Are you saying

3   that --

4            MS. CANTU:  Yes.  Yes, we have evidence -- which

5   this is the point that we were trying to go into discovery

6   because we do have evidence of other companies that have

7   been allowed into the City landfill or they do the same type

8   of business as our clients, and they are being allowed into

9   the landfill.  And to our knowledge, there hasn't been any

10   applications for new franchises in the same type of business

11   that our clients are in.

12            THE COURT:  All right.  Ms. Guerrero?

13            MS. GUERRERO-SOUTHARD:  Your Honor, that's their

14   burden of proof and we have no information that that is

15   being applied that way.  We have testimony from the solid

16   waste manager, if allowed to, that the reason why they've

17   been told time and again for years is because they don't

18   have this franchise license agreement.

19            They were allowed to come in when they were

20   attesting that that was their construction demolition.  If

21   they have an equal protection claim, it's their burden to

22   show and address it even in pleadings for our purposes of

23   the Motion to Dismiss, which is also before the Court.

24            THE COURT:  That's why I'm considering --

25            MS. GUERRERO-SOUTHARD:  Right.

1          THE COURT:  -- that's the reason I'm asking the
2    question.

3          MS. GUERRERO-SOUTHARD:  Right.  There are some
4    similarly situated.  You can't just say, yes, eventually
5    we're going to prove that.  You don't move forward on a
6    cause of action like that unless you can assert that there
7    is somebody indeed that's being treated differently.

8          And I can't contravene something that I'm not even
9    given a name about whose being treated differently, Your
10   Honor.  It's just -- we're making this statement that
11   somebody else is being treated differently.

12         THE COURT:  Let me ask Plaintiffs, under the equal
13   protection claim, you assert that the City has an improper
14   motive to treat you differently.

15          What do you think that motive is?

16         MS. CANTU:  Money, Your Honor.  It's a money grab
17   Ordinance that they're trying to do.  They are just trying
18   to get money out of this Ordinance and forcing our clients
19   to get a franchise that clearly under the Charter they're
20   not eligible or they don't fall into that category.

21         THE COURT:  But if it's just a money grab, why
22   wouldn't they be grabbing the other people that you say that
23   you know of that are in the same business as your clients,
24   but they're not --

25         MS. CANTU:  Well because, Your Honor, they

1  already --

2          THE COURT:  I mean, if it's a money grab, I want

3  to collect from everybody and I'm sure the City does.

4          MS. CANTU:  Well they're not doing their job

5  obviously because they didn't even know how many companies

6  had a franchise until we brought it up.

7          And the fact is that they already tried to enforce

8  this Ordinance to two of our Plaintiffs before and nothing

9  went through.  They just let it sit.

10          THE COURT:  Do you have any comment from the City,

11  Ms. Guerrero?

12          MS. GUERRERO-SOUTHARD:  Your Honor, again we would

13  have testimony, if allowed, from Mr. Geiss (phonetic) that

14  will tell you that the recycling facility is not -- they're

15  run it at a loss since its inception.  They lost even close

16  to 500,000, am I correct, that one year.

17          This is not a money grab.  Revenue certainly is

18  not a reason to pre-empt an Ordinance.  They have to

19  establish that somehow, you know, even if it was a

20  revenue-generating function -- which it's not.  It's for the

21  health and safety and welfare of the citizens.  And they

22  address on the face of the Ordinance for recycling purposes

23  they were attempting to address pilfering and scavenging,

24  not to raise revenue.

25          But even if that were to be established, the

1   City's evidence is going to be that they -- this money goes

2   to streets.  Whatever they get from the franchise goes to

3   repair streets.  And it's certainly -- the money that is

4   collected is not going to address all the streets' problems

5   in Laredo.

6         So they would have to establish somehow -- not

7   only is the franchise license money received from it, not

8   designated to the area that we're saying, but it's not true

9   because they're making way more money.  And that's not going

10  to be the evidence, Your Honor.

11        MS. CANTU:  Your Honor, if I may answer to that?

12        THE COURT:  Go ahead, Ms. Cantu.

13        MS. CANTU:  When they had the public hearing or

14  the introduction of the Ordinance into the facts, the

15  discussion was about, yes, scavenging and pilfering the

16  recyclable materials.

17        THE COURT:  This is the 2013 Ordinance?

18        MS. CANTU:  2013.

19        THE COURT:  Okay.

20        MS. CANTU:  You know, the Ordinance in question.

21        All their discussion had to deal with the blue

22  bins.  The materials that were going into the blue bins.

23  City Council Member Ned Rice, even stated that the City had

24  lost --

25        MS. GUERRERO-SOUTHARD:  I'm just going to object,

1    Your Honor, as to relevance.

2             MS. CANTU:  -- three million dollars.

3             THE COURT:  But my point is, even I say what you -

4    - even if I accept what you say is true, I mean the point is

5    doesn't the general Municipal Code touch upon other things

6    besides just the blue bins and that's what they are falling

7    back to.  They're saying that your companies that you

8    represent have always had the requirement.  It's just never

9    been enforced or when it was enforced -- or at least I took

10   it hadn't been enforced very well -- but she's saying none

11   of your clients is claiming to be a self-hauler more than

12   they are, even though they had this dual business.

13            MS. CANTU:  They're not dual businesses, Your

14   Honor.  They are owned individually.

15            THE COURT:  Well I know that you've got two that

16   are not --

17            MS. CANTU:  Right.

18            THE COURT:  -- that are not self-haulers.  But

19   then you have one client who kind of in -- or even passes as

20   both functions, a self-hauler and also a business who picks

21   up the demolition waste and tried to get it into the

22   landfill.

23            MS. CANTU:  Well, IIIPG, Your Honor, it's a

24   demolition company.  It's a construction and demolition

25   company.  Yes, like it leases equipment to demolish the

1  buildings.  It can also lease the container.  And he can

2  self-haul to the landfill.

3          So the City is telling us that as a self-hauler he

4  can release a container and drive it on his own?  That's

5  what they're saying.  Because he is the construction and

6  demolition business.

7          THE COURT:  Okay.  But my question is that even

8  not being a self-hauler, they're saying that the original

9  Municipal Code before the 2013 Ordinance included the

10  franchise fee for that type of service.

11          MS. CANTU:  And it was objected to, Your Honor,

12  when they -- and I couldn't find anything that that

13  Ordinance actually went into effect.  Yes, they introduced

14  it, but I never found anything that they actually went into

15  signing of that Ordinance in 2005.

16          THE COURT:  But that's -- we're not talking about

17  2005.  I think they're saying back to 1998.

18          MS. CANTU:  In 1996 there was a specific Ordinance

19  that was issued to Southern Sanitation, Your Honor.  That

20  Ordinance specifically addresses that it is a refuse company

21  that is being granted a franchise.  It has nothing to do

22  with the franchise for everybody like they're doing now.

23          MS. GUERRERO-SOUTHARD:  Your Honor, may I

24  submit --

25          THE COURT:  Yes, Ms. Guerrero?

1          MS. GUERRERO-SOUTHARD:  -- Exhibit 3?

2      (Defense Exhibit 3 marked for identification.)

3          MS. GUERRERO-SOUTHARD:  Exhibit 3 is to IIIPG and

4   it's dated December 3rd, 2008.  And Your Honor, while

5   certainly there's never been any money collected from IIIPG,

6   it has been pointed out to him -- to Mr. Gonzalez -- that if

7   you want to go to City landfill, that under Chapter 14,

8   14-9(j), you are required to have a Franchise Agreement.

9          Because this dates back to prior Ordinance, not

10  just the recycling.  And I know they're contesting --

11  they're out trying to raise something that never passed in

12  2005, but this dates back for a long time.  And they've been

13  under this notice.  Just get a Franchise Agreement like the

14  other companies.

15         MS. CANTU:  Well I'd just like to point out --

16         THE COURT:  Ms. Cantu, for the Record.

17         MS. CANTU:  I'm sorry.

18         THE COURT:  That's okay.

19         MS. CANTU:  I'd just like to point out this letter

20  says that it refers to a section of an Ordinance, It doesn't

21  state what Ordinance are they referring to.

22         THE COURT:  All right.  Let me just say generally,

23  is there anything you want to say regarding your motions,

24  Ms. Morales?

25         MS. MORALES:  Your Honor, of course, whatever we

1    put in our -- put in our brief in support of our Motion for

2    Injunction and now replied to their Motion to Dismiss, Your

3    Honor.

4          I'm really baffled that the fact that they say

5    that they have the right by Ordinance to impose a franchise

6    on everyone.  But we all agree that the law is that your

7    Charter is the Constitution of the City.  And that it is

8    clear from all case law that those are the powers and rights

9    that you derive as a City, whatever is given to you by the

10   City Charter.

11         And unless it is -- and unless a State statute

12   addresses those issues -- even if the City Charter says you

13   can do something that the State legislature says that you

14   can't, then you can't.

15         And what we're saying, Your Honor, is basically we

16   have definitions of everything that we're dealing with here.

17   We're saying we're not subject to a franchise because of the

18   type of work that we do.

19         We are not providing a service that the City's

20   providing.  And I don't know where they think that that's a

21   public utility.  It doesn't follow the definitions of

22   anything.

23         Section 8 specifically deals with public utilities

24   and franchisees to be granted.  And yes, it is granted

25   through Ordinance.  They don't come out of the blue and you

1   just don't say it's in the City Charter we can grant you an

2   Ordinance, we're going to require one.

3           And then specifically, Your Honor, even assuming

4   that the Court were to say that the type of work and the

5   type of demolition and construction waste that our clients

6   haul, whether they do it because they themselves demolish

7   the property or they put -- and they put -- they have a

8   contract with whoever they contract with to put that kind

9   of -- that waste in there.  The demolition and construction

10  waste that goes into their bins -- into those containers,

11  Your Honor, -- is not just anybody can come in and put their

12  trash in there.

13          I mean, there's a contract between them and the

14  people that are doing it.  They're exempt from being

15  required --

16          THE COURT:  Well their argument is that it equates

17  to trash.

18          MS. MORALES:  Well, but --

19          THE COURT:  But you're saying that's their

20  argument.

21          MS. MORALES:  Yeah, but that's not what this is

22  about.  Because we don't do that.  We don't provide that

23  service to the ordinary citizen.  We're not taking the place

24  of the City.  There's jurisdictions, I mean, in San Antonio,

25  they have the haulers and it's not just self-haulers.  It's

1    haulers that haul this type of demolition and construction

2    work, they have a fee.  They have an annual fee in order for

3    them to get into the -- they have a permit in order to get

4    into the landfill.

5            And here the City is trying -- has tried and tried

6    for years to impose this on them, knowing -- and there's a

7    reason why there wasn't any activity in all these years.

8    And I think that -- I don't know this for a fact, but I mean

9    it's -- we kept telling them, we don't fall under them.

10   We're not a public utility.  You can't impose this

11   franchise.

12           And talk about money, four percent of what you

13   make.  Your books are subject to them reviewing what you

14   make, all your contracts.  It's very different from what

15   Trash Code does, which they literally put in people that

16   would rather have like the Stripes and all these companies,

17   the hotels, you know, they literally put all their trash in

18   there.

19           That's solid waste.  That's clearly under the

20   statute -- under the state statute.  But even if we get --

21   like I said, even if we get passed that, even if the Court

22   were to say well they -- Section 8 of their Charter does

23   work -- how it comes in there is that they're public

24   utilities, they're still exempt by State law.

25           And the City Charter and their Ordinances cannot

1  impose something on you that's contrary to City -- to the

2  City statutes.  I mean, that states --

3          THE COURT:  Can you repeat that again?

4          MS. MORALES:  This is the States statute that --

5  even if it would say this is solid waste and it says that

6  this section does not apply to private entities that

7  contract to provide temporary solid waste disposal service

8  or construction project, which is what we do.

9          Whether you're a self-hauler or not, whether

10  you're IIIPG or PedroPete, they're contracting with a

11  construction site to haul their demolition and construction

12  waste.  And what this is saying is that you cannot charge --

13  that the public entity can contract with someone like they

14  did with TrashGo or with Southern Sanitation to dispose of

15  solid waste for the City.  But you can't impose it on people

16  that do this type of work.  That's what the statute says.

17          THE COURT:  Do you have a comment on that

18  Ms. Guerrero?

19          MS. GUERRERO-SOUTHARD:  Yes, Your Honor.  We're on

20  a Preliminary Injunction and Motion to Dismiss --

21  Preliminary Injunctions an extraordinary equitable relief

22  that leads to the status quo.

23          What was the status quo before the 2013 amendment

24  was that they were required, as the evidence showed, by

25  Exhibit 3 that I provided to the Court, to get a franchise

1  license if they intended to use the City landfills for the

2  purposes of transporting construction and demolition that

3  was defined under the City's Ordinance, rubbish, that they

4  have authority as home-ruled municipalities have, to

5  regulate.

6          Home-ruled municipalities have full power of self-

7  governance and you look at the Legislator, not for what

8  powers are granted, but what powers are limited.  So what

9  their burden today is, is to establish that there's a

10 statute out there that says, "City, you cannot do that.  You

11 cannot require a construction and demolition company" --

12         THE COURT:  Isn't that what they're arguing by

13 that exemption that they point to?

14         MS. GUERRERO-SOUTHARD:  Well they're saying

15 there's a definition out there that was -- that says the

16 construction, demolition for temporary purposes is not

17 encompassed within the language of this solid waste.  But it

18 doesn't say, You cannot do this, City."

19         And the City is not intending to do that for

20 temporary construction and demolition.  What the City is

21 saying if you yourself do not demolish the building, you

22 cannot go and say, "Well I'm just going to put my container

23 out there" with, you know, Company B who actually did the

24 demolishing to throw their stuff in there.  And just because

25 we're in the business of construction and demolition say

1   that we're the ones that demolished it when we get to the

2   landfill.

3         That's the problem there.  If you demolish it.

4   You take your own hammers and whatever it takes to bring

5   down building and you take that waste into the landfill,

6   you're not going to have this problem.  But when somebody

7   else is doing the demolition and you're just providing a

8   container and transporting it through the City streets, then

9   that is different.

10         If you want to get your own landfill to doing

11   that, just get a Franchise Agreement.  Now the Legislator

12   chooses to pre-empt a subject matter, it must do so with

13   unmistakable clarity.  And I provided for the Court on

14   Tab 19 the case of *Dallas Merchant versus Concessioners*

15   *versus the City of Dallas*, a case in which what they were

16   trying to do is establish regulations for the sale -- to

17   prohibit the sale of alcohol within 300 feet from a

18   residence.

19         And TABC by that point had already been adopted

20   and what it said here is that when there is clear language

21   that prohibits -- and if we look as an example, Your Honor,

22   on page 3 of that copy -- Tab 19, page 3 -- there the TABC

23   said specifically the State may not impose stricter

24   standards on premises or businesses required to have a

25   license or permit under this Code.

1          While this encompasses alcohol, I'm trying to

2    establish, Your Honor, by this that when there's clear

3    language like this, certainly a City cannot try to pass an

4    Ordinance that is different from what the statute provides.

5    But there is no statute that they provided to this Court

6    that says, "City, you may not require a Franchise Agreement

7    for individuals that are using your streets and thorough

8    ways and alleys to transport construction and demolition

9    waste."

10          What they're saying is, those people that are

11   temporary, the ones that just do it for the purposes of, you

12   know, they've been contracted to do that work, that's

13   different.  And that's not what the City is trying to

14   regulate.  The City is trying to regulate people that are

15   just utilizing our streets and thorough ways to haul this

16   type of -- this type of rubbish that goes to our landfills.

17          THE COURT:  Do you want to follow --

18          MS. GUERRERO-SOUTHARD:  Again, I don't, you know,

19   I don't believe that they've met the merits or the standards

20   for the Preliminary Injunction.  I understand the Court is

21   simply asking certain questions, so I will not delve onto

22   each argument unless the Court asks me.

23          THE COURT:  I'll give you a chance later, if you'd

24   like.

25          MS. GUERRERO-SOUTHARD:  Okay.  Thank you.

1          THE COURT:  I mean, I'm just -- Ms. Morales?

2          MS. MORALES:  Yes, Your Honor.

3          The City of Laredo is a home-ruled City.  That

4   means that it operates -- what that means is that you look

5   to the State Constitution, you look to the State statutes to

6   see what you can't do.

7          Normally you can do under your police power to do

8   what you have to do to regulate, of course, the disposal of

9   solid waste.

10         However, the City of Laredo has a City Charter.

11   And Ms. Guerrero and I agree that the City Charter -- that

12   is a home-ruled City -- it can everything that is not

13   prohibited by statute to do.

14         However, they -- the City of Laredo has a City

15   Charter.  And it's -- the case law is ample in the cases

16   that she cites.  It says:

17       "The City cannot perform a governmental function in any

18       manner contrary to the expressed provisions of its City

19       Charter."

20         In other words, if you have a City Charter and you

21   have undertaken to put all these things in your City

22   Charter, then that's what you look at.  You don't go look at

23   state statute and say, "Well it doesn't prevent me from

24   requiring a franchise."  She's correct.  We're not going to

25   find anywhere that it says, "You, City of Laredo, you can't

1    require a franchise."  That's not what that's about.

2          Our argument is about -- what we're saying is we

3    have a City Charter.  So the City Charter is basically your

4    Constitution.  There's case law that says that.  It says

5    just like the Texas Constitution is supreme law of the State

6    of Texas, the City Charter is the supreme law of that City.

7          The City can only exercise the powers that are

8    expressly granted by its Charter.  And we look at Section 8,

9    a section that says that the City can grant a franchise to

10   public utilities.  I know that she's trying to make a

11   distinction says, wel,l by Ordinance.

12         I don't believe that's what that means.  I think

13   it means public utilities.  You look at the definition of

14   public utilities.  We don't fall under any of those

15   categories.  So why do we have this? We have what is called

16   "*Ultra Vires* Acts." All acts that go beyond the scope of

17   the powers granted by the City Charter are void.  A City

18   Charter's grant of powers will be strictly construed.

19         In other words, that's your law.  That's what we

20   look.  We're not looking out -- what we're telling about the

21   exception, Your Honor, is that in the Safety Code and in the

22   Administrative Code, there's definitions.  Those are what

23   limits what they can regulate.  That's what we're saying.

24         But you start from the very beginning.  At the

25   initial, this Ordinance is void.  They're trying to impose a

1   franchise requirement on a non-public utility.  And I think
2   we all agree that we are not a public utility.  We're not an
3   electrical company; we're not a gas company.  All of those
4   definitions that are in there as to what constitutes a
5   utility -- a public utility.
6           So we don't produce electricity, we don't sell
7   water, we don't have a telecommunications.  All of those are
8   public utilities according to the plain language of the word
9   and the definitions that are found in the state statutes.
10          The City can pass powers that may be reasonably
11  implied from the powers granted.  Well, the City Charter
12  grants them the power to regulate public utilities to impose
13  a franchise.  How is that reasonably implied that you could
14  do construction and demolition work, can be imposed a
15  requirement of a franchise?
16          And there is a reason why they didn't start citing
17  them until 2014, a year after -- more than a year after the
18  Ordinance was passed, although the only thing they modified
19  was they added the recyclables because they know that this
20  -- that they're not under that statute.
21          And it is a money grab.  It is, because under
22  their definition, Your Honor, of that Ordinance, the
23  gardener that goes to my house, has to take their -- has to
24  go to the landfill and has to get a franchise because he's
25  transporting somebody else's recyclables or somebody else's

1    trash.

2           That's how ridiculous it gets if you read that

3    Ordinance.  Anybody who does for anybody else these things

4    has to get a franchise and not only these three people.  If

5    you look at the definition, they could prevent the gardeners

6    and say, "Hey, wait a minute, you come in here, you're a

7    gardener, you come every week or every other day and you

8    bring all this trash from wherever you clean, well we're

9    going to impose a franchise on you" because that's how

10   strict and how limiting their definition is in the

11   Ordinance.

12          So what we're saying, Your Honor, is that they

13   violated their own City Charter in imposing -- in trying to

14   impose an Ordinance -- I mean, a franchise on us -- and

15   therefore, it's a void -- it's a void act and that's where

16   the violations come in.

17          Not that they have the right to regulate.  Yes, if

18   the City Charter said -- I would imagine if it said that,

19   you could.  I mean, non-public and whoever does this as the

20   Ordinance says, but that's not what the City Charter says.

21   And we have to give it a strict construction to what powers

22   are derived from their City Charter.

23          There is a substantial irreparable injury, Your

24   Honor, to us.  We have not been able to enter into contracts

25   to do the demolition and, you know, construction, gathering

1    of waste from those companies because we're not able to go

2    to the landfill.  And so of course there is.  And we're

3    saying that Ordinance does not meet the requirements.  It's

4    not authorized by the Charter and therefore we should not be

5    subjected to it and there should be an injunction.

6              And what happened -- why was the --

7              THE COURT:  That's not the entire case of it.  I

8    mean, if you still have a problem with their Ordinance, you

9    can still get a franchise fee, enter into contract

10   negotiations.  If it's 4 percent, increase your bid up

11   4 percent and try to get work.  And then sue them.

12             MS. MORALES:  Well, but the problem, Your Honor,

13   is that we would accepting that they have a right to do that

14   and they don't.  We would be saying, "We're a public

15   utility.  Here we are, impose a franchise fee on us."  But

16   we're not.

17             THE COURT:  All right, anything else?

18             MS. MORALES:  Your Honor, what was happening

19   immediately before this lawsuit was filed is that we were

20   not being required to get a franchise.  Somewhere in 2014,

21   somebody either Mr. Geiss' boss, somebody told them -- don't

22   -- told the people at the landfill, "Don't let them in."

23             THE COURT:  Particular to just your clients?

24             MS. MORALES:  Well no, everybody.

25             THE COURT:  Okay.

1          MS. MORALES:  I don't think any of them can go in.

2          THE COURT:  No, but what I guess you're saying is

3     you're saying that they are treating your clients unfairly

4     or everyone unfairly that's in your client's business?

5          MS. MORALES:  They're getting the gardeners that

6     take the trash that they pickup from my garden in and pay

7     the fee that they're supposed to pay.  They're not saying,

8     you know, you fall under this definition, which they clearly

9     do because they're transporting solid waste for somebody

10    else.  Under their definition that falls in that category.

11    So everybody else is being allowed to go, except them three

12    because they're saying we have to -- and it's not only to

13    the City's landfill, Your Honor.

14         Because Defendant's Counsel talks about "We have a

15    right regulate what goes into our landfills."  They're being

16    prevented from going into another landfill that is not owned

17    by the City.

18         THE COURT:  Why are they being prevented to go to

19    a private landfill?

20         MS. MORALES:  Because they say they don't have a

21    franchise.

22         THE COURT:  But the point is they're being

23    prohibited from maybe picking up the waste, right?  I mean,

24    there's nothing that keeps them -- I guess what I'm saying

25    is they're supposed to get a license to haul the waste,

1  correct?

2          MS. MORALES:  There is no license to haul.

3          THE COURT:  Well I said license -- the franchise.

4  The franchise covers anyone who hauls, right?  And anyone

5  who deposits?  So I guess my question is:  If they're

6  required to get a franchise, they could get fined by hauling

7  the material they pick up.  But they can't keep them out of

8  a private landfill, can they?

9          MS. CANTU:  Your Honor, they sent a letter -- the

10  City Attorney of Laredo sent a letter to the Ponderosa

11  Regional Landfill stating that if they continue to allow our

12  clients into their private landfill that they would revoke

13  their franchise with the City for the Southern Sanitation

14  which is a co-owner of that landfill.

15          THE COURT:  How does that work, Ms. Guerrero?

16          MS. GUERRERO-SOUTHARD:  Well, Your Honor, you can

17  take waste -- solid waste and dispose it in designated

18  landfills.  The City doesn't just maintain its own

19  landfills.  There are other private landfills -- such as

20  Ponderosa -- and what the City Attorney wrote to Ponderosa

21  is, "Please don't allow them in because they don't have a

22  franchise fee for transporting this."  They hadn't obtained

23  the required franchise.

24          THE COURT:  So are you saying the private

25  landfills are also regulated by the City that it has to meet

1   certain -- the same standards as the City?

2            MS. GUERRERO-SOUTHARD:  Right.  They get permits.

3            THE COURT:  Is that correct?  They have to meet

4   the same standards of the City landfill or you somehow

5   chastise the private landfill?

6            MS. GUERRERO-SOUTHARD:  Yes, Your Honor, but

7   they're regulated by the State not by the City.  And all we

8   asked was don't allow these individuals who haven't obtained

9   a franchise to call to deposit this in that landfill.

10            THE COURT:  That's what I'm saying.  She's saying

11   the private -- this is a personal application.  She's saying

12   that the private landfills are regulated by the State and

13   you're the City and you're calling them up and tell them not

14   to do that.  What if they say, "Forget it, I'm going to let

15   them in."

16            I mean, it seems to me you have to have some teeth

17   to enforce that.

18            MR. GEISS:  Yeah, Your Honor, the City has no

19   jurisdiction over that landfill.  It's actually outside of

20   the City limits.

21            THE COURT:  Okay.

22            MR. GEISS:  It was just for courtesy the City

23   asked them to not allow the -- given the haul because they

24   were trying to prevent them hauling on the streets of the

25   City of Laredo, but that's basically what it was.  They have

1   no --

2          THE COURT:  I mean, I understand you had the

3   franchise set up that you don't want them picking up and

4   hauling it, and that's a violation in and of itself.  But I

5   didn't understand how you could keep them out of a private

6   landfill.

7          MS. CANTU:  I have a copy of the letter that sent

8   to Ponderosa as to landfill, Your Honor.

9          THE COURT:  I mean, you can put it into evidence.

10  I mean I don't say that -- I don't think that it's

11  uncontroverted that they called the landfill and asked them

12  to keep you out, but.

13         MS. GUERRERO-SOUTHARD:  Your Honor, it just says

14  you're assisting in the violation of City Ordinances

15  prohibiting this activity.

16         THE COURT:  Anything else, Ms. Morales or

17  Ms. Cantu?

18         MS. MORALES:  No, Your Honor, other than to point

19  out that their own citation of that other statute excludes

20  us from being -- including having to have a franchise or any

21  kind of regulation from the part of the City landfill.

22         THE COURT:  All right.  Do you want to follow-up,

23  Ms. Guerrero, with any --

24         MS. GUERRERO-SOUTHARD:  Yeah, we can go all day,

25  but you have the Charter provision that doesn't say that you

1    can only extend or you only have the power to grant to

2    public utilities.  It says, "of all public utilities."  I

3    put this in evidence, I failed to label it as Exhibit 1.

4                THE COURT:  It's up here and I marked on it a

5    little bit.

6            (Defense Exhibit 1 marked for identification.)

7                MS. GUERRERO-SOUTHARD:  Thank you, Your Honor.

8                THE COURT:  So for the Record, that blue thin mark

9    that's bracketing Paragraph 8.01 is me.  You can give that

10   back to her and let her mark it one.

11               Give Ms. Morales a copy if she needs one or we'll

12   make you a copy.

13               MS. GUERRERO-SOUTHARD:  I did provide one, Your

14   Honor.

15               MS. MORALES:  I was trying to understand that,

16   Your Honor.  Is she saying that we are a public utility?

17               MS. GUERRERO-SOUTHARD:  No, not at all.  It says

18   we have the power to grant franchises of all public

19   utilities.  It doesn't say -- it doesn't limit it to you can

20   only grant it to public utilities as they are intending.

21               THE COURT:  She's interpreting the statute as that

22   private companies are not included in that --

23               MS. GUERRERO-SOUTHARD:  In this Charter that they

24   claim prevents us from doing so?

25               MS. MORALES:  So where does their power come from?

1   If they're all Ordinances that pursuant to Article 8.

2          MS. GUERRERO-SOUTHARD:  We're home-rule

3   municipality.  We have the powers and we only look to the

4   legislative for limitations of power and even the Charter we

5   would look at it to limit the power.  It doesn't limit the

6   power on its face.

7          Your Honor, I gave her a copy.  It says of all

8   public utilities, not to all.

9          MS. MORALES:  Cities don't -- I mean --

10         THE COURT:  I understand your arguments.

11         Anything else?

12         MS. GUERRERO-SOUTHARD:  Not at this time, Your

13  Honor.

14         THE COURT:  Let me just take a five-minute recess

15  and I'll go in and look at this real quick and I'll be right

16  back.

17         THE MARSHAL:  All rise.

18      (Recess taken from 10:44 a.m. to 10:54 a.m.)

19         THE MARSHAL:  All rise.

20         THE COURT:  All right, please be seated.  All

21  right.  I had to look through some things.  I don't think I

22  need to hear any more unless you want to put something else?

23  You know sometimes you sit there for a few minutes, you

24  think I should have said that.  I'm giving you that chance

25  if you like.

1          Do you want to say anything else, Ms. Morales?

2          MS. MORALES:  No, Your Honor I was just discussing

3   some things with the City --

4          THE COURT:  Your Honor, when I was in private

5   practice after I needed about five minutes later, God, if

6   I'd said one more thing that would have been conclusive to

7   the whole matter.

8          Do you need to say anything else, Ms. Guerrero?

9          MS. GUERRERO-SOUTHARD:  No, Your Honor, thank you.

10         THE COURT:  All right, then I'll try to get some

11  rulings out by the end of the week.

12         Have a good day, everyone.

13         MS. GUERRERO-SOUTHARD:  Thank you, Your Honor.

14         May we be excused?

15         THE COURT:  Have a good day.

16         THE MARSHAL:  All rise.

17      (Proceeding adjourned at 10:54 a.m.)

18                      *  *  *  *  *

19          *I certify that the foregoing is a correct*

20  *transcript to the best of my ability from the electronic*

21  *sound recording of the proceedings in the above-entitled*

22  *matter.*

23  */S/ MARY D. HENRY*

24  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*
25  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
    *JTT INVOICE #54224*
    *DATE:  AUGUST 1, 2015*