IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| HIPG ENTERPRISES, VISA SERVICES, and, PEDROPETE SERVICES, L.L.C. Plaintiffs | § § § § | |
| v. | § § | CIVIL ACTION NO. |
| THE CITY OF LAREDO, Defendant | § § § § | 5:15-CV-00029 JURY |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiffs, HIPG Enterprises, Ltd., Visa Services, and  Pedropete Services, L.L.C. ("Plaintiffs") complain as follows about action taken by the Defendant City of Laredo ("the City"):

NATURE OF ACTION

1.      Plaintiffs collect, transport, and dispose of construction and demolition waste "c&d waste" generated in the City of Laredo and surrounding areas.  Through this action Plaintiffs challenge under 42 U.S.C. §1983, the anti-trust laws of the United States, and supplemental state claims, Laredo City Ordinance 2013-O-137 passed on October 7, 2013 that is currently severely affecting their business operations and, if enforced, will permanently damage their business operations.

2.      On October 7, 2013, the City of Laredo Council by a 6 to 0 vote adopted Ordinance 2013-O-137 ("Ordinance") that stipulates that no person or entity, aside from City's employees and agents, shall collect, convey, transport or dispose of garbage, trash, or recyclable materials of any other person or entity for a fee or profit unless and until such person or entity first obtains a

franchise.  The Ordinance also orders that all franchisees must dispose of all municipal solid waste

("solid waste"), industrial solid waste and recyclable materials, as those terms are defined in 30 TAC

§ 330.3, only at City owned sanitary landfills and  City municipal solid waste facilities such as

transfer stations and Material Recovery Facilities.  Lastly, the Ordinance amended the previous

standing ordinance to add, for the first time,  a $500.00 penalty fee for violation of section 14.9(j).

3.      The effects of this Ordinance are:

(a)     violates the City's Charter by authorizing the City to grant a franchise to a company
        other than a public utility;

(b)     precludes Plaintiffs from collecting and transporting c&d waste, solid waste,
        industrial solid waste and recyclable materials generated by private residents and
        commercial businesses in the City to recycling facilities and/or duly permitted
        landfills;

(c)     eliminates the practice for a competitive private marketplace for commercial waste
        disposal and eliminates the rights of Plaintiffs to dispose of such c&d waste at duly
        permitted landfills of their choice;

(d)     substantially increases the cost to Plaintiffs for c&d waste disposal in the City; and,

(e)     requires Plaintiffs to significantly change their prices, routes and services.

4.      The harms inflicted by this Ordinance have a sole purpose - infringe upon Plaintiffs'

rights to vote and rights to live and work where they will; to earn their livelihood by any lawful

calling; and to pursue any livelihood or avocation.  The forced requirement to obtain a franchise to

be able to collect and/or transport  all garbage or trash or recyclable materials as a means to force the

franchisees to dispose of the garbage, trash, and recyclable materials at City owned or managed

facilities constitutes an anti-free-enterprise action by the City which is unlawful on multiple grounds. It violates the City's charter. It is unconstitutional. It is contrary to Texas statutes. On these and other grounds, enforcement of the Ordinance should be enjoined, immediately and permanently.

JURISDICTION AND VENUE

5.     The Court has jurisdiction over this suit under 28 U.S.C. §§1331 and 1343(a)(3) because the Plaintiffs assert, under 42 U.S.C. § 1983, claims based on the United States Constitution, assert anti-trust claims under 15 U.S.C. § 2, and seek a declaratory judgment pursuant to 28 U.S.C. § 2201. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367 as they so relate to the federal-question claims that they form part of the same case or controversy.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2) as the City resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

PARTIES

7.     Plaintiff HPG Enterprises, Inc. is a Texas corporation in business since 1989 in demolishing buildings; buying and selling old and new construction materials; cleaning and leveling real properties; construction of buildings; and, leasing heavy equipment, as well as, buying and selling its parts.

8.     Plaintiff Mario Sanchez d/b/a Visa Dumpster & Rental Service, and d/b/a VI-SA Services is an individual doing business in the county of Webb under an assumed name offering rolloff trucks to haul construction and demolition waste in Laredo, Texas and the surrounding areas.

9.     Plaintiff Pedropete Services, L.L.C. is a Texas limited liability company operating since 1998 doing business as a c&d collection company that offers roll-off trucks with dumpsters,

pick-up trucks and utility trailers to haul construction and demolition waste in Laredo, Texas and the surrounding areas.

10.     The City is a home rule city in the State of Texas. It may be served through its City Secretary, Gustavo Guevara, Jr., whose address is Laredo City Hall, 1110 Houston St, 3rd floor, Laredo, Texas 78040.

## BACKGROUND FACTS

11.     The collection, transportation, recycling and disposal of c&d waste  produced or generated in the City by residential, commercial and industrial businesses has been handled exclusively by private companies.  Until the passage of the Ordinance, these private companies were not required to obtain a franchise from the City to be able to use the City's public roads in order to conduct their business.  Since the year 2008, Plaintiff HIPG Enterprises, Inc. entered the City Landfill for more than 800 loads;.  Plaintiff Mario Sanchez entered the City Landfill for more than 500 loads.  From the year 2014, Plaintiff PedroPete Services, L.L.C, entered the City Landfill for more than 50 loads.  *(See Exhibit I).*

12.     In the past and in violation of the City Charter, the City granted franchise agreements to companies for the purpose of distributing and maintaining trash cans with commercial advertisement and also to construct, maintain and operate a commercial container refuse gathering and disposing services.

13.     Plaintiffs through the Texas Public Information Act/Texas Open Records Act, requested that the City disclose all franchise agreements it had issued and granted for the purpose of hauling, transporting, collecting, and disposing of solid waste, garbage, trash, and recyclable materials. The City only disclosed two (2) companies (Abel Reyes and Rosie F. Reyes D/B/A A.R.K

and Laredo Clean Sweep, Inc. D/B/A Southern Sanitation Services) to have such a franchise agreement with the City. Through further research, Plaintiffs came to discover that the City had also issued franchises to two (2) additional companies (Jerry Resendez Enterprises, Inc. a Texas Corporation DBA Trashco and Batista Roman Enterprises, Inc. D/B/A Orange Waste Management).

14.     The Laredo City Council by a 6 to 0 vote on October 7, 2013 adopted the Ordinance, a copy of which is attached hereto. *(See Exhibit A)*. This Ordinance makes it a crime for any person or entity to collect, convey, transport, or dispose of garbage, trash or recyclable materials from any other person or entity for a fee or for profit until such time the person or entity obtains a franchise. The Ordinance makes it a crime for municipal solid waste, industrial solid waste or recyclable materials to be disposed off at any location other than the city sanitary landfills and other city municipal solid waste facilities such as transfer stations and material recovery facilities and added, for the first time, a penalty of $500.00 for violations of section 14.9(j).

15.     This  Ordinance goes against the discussion held by the City Council when this Ordinance was first introduced on September 16, 2013. The introduction of this Ordinance revolved around the collection, removal and disposal of cardboard debris through the city limits and making it unlawful for any person to remove recyclable materials from the City's recycling "blue" bins. *(See Exhibit B)*. The purpose of the discussion of the September 16, 2013 meeting dealt directly with trying to prevent people from scavenging from the blue recyclable containers that the City invested in, yet the Ordinance makes it unlawful to collect or transport any garbage, trash or recyclable material from all containers not just the blue recyclable containers the City invested in. Specifically, Council Member Juan Narvaez stated that the City had lost $3 million dollars on the blue cans and felt that the investment needed to be protected from persons scavenging "things of value" from those

cans. In addition, the then City Manager, Carlos Villarreal, stated that the people now knew that blue cans equaled money. The City Manager advised that a recommendation would be given for the next meeting, but no such recommendation was given the following meeting of October 7, 2013, and the council passed the Ordinance without further discussion.

16.     Aside from the preventing scavenging and taking of "things of value" from the blue recyclable containers, the City has made no public justification as to why it deemed it necessary to pass this Ordinance nor add the $500.00 for violation of section 14.9(j) - franchise violations.

17.     The City claims that enforcement of this Ordinance is to institute an expanded recycling system and to prohibit the unauthorized taking of recyclables set out for collection by the City as opposed to the stated claim made in the Ordinance passed in 2005 which was to upkeep and maintain the City's streets.

18.     Prior to the enactment of Ordinance 2013-O-137, Plaintiffs were allowed into the City landfill to dispose of the c&d waste in their respective business trucks. Undeniably, this Ordinance is not aimed at protecting public health, safety, or welfare related to uncollected or improperly disposed of solid wastes. As evidenced by Exhibit K and L, Plaintiffs entered the City multiple times with the City's knowledge and consent.

19.     This is not the first time that City introduces this type of ordinance. The City attempted to introduce an ordinance that would require a person or entity to obtain a Solid Waste Franchise Agreement or Self Hauler Permit on February 22, 2005. *(See Exhibit C)*. Specifically, the City wanted to amend Chapter 14 of the Code of Ordinances to require a Solid Waste Franchise Agreement or Self-Hauler Permit from all solid waste haulers including construction or repair contractors and landscape or tree services. At the public hearing, one hauler opposed this ordinance

and requested that the City look into the validity of such ordinance since it required a franchise for a non-public utility company and therefore not authorized under the City Charter. *(See Exhibit D)*. The Solid Waste Director at the time, Mr. Oscar Medina, stated that reason for the Self Hauler Permit was to have contractors who were circumventing paying an $8.50 monthly fee to connect a water meter and the garbage fee to pay a franchise fee.  According to Medina, contractors claimed they shouldn't have to pay the monthly garbage fee since they were hauling their own garbage to the landfill and so the City wanted to make sure that the contractor paid a franchise fee since they were not hiring a franchise hauler.  The City Council agreed to post-pone the ordinance relating to a Solid Waste Franchise Agreement or Self-Hauler Permit until a later time when they had a chance to meet with the haulers.

20.     In the latter part of the year 2008, the City attempted to enforce the franchise ordinance 2005-O-046 relating to Chapter 14, Sec. 14-9 Rates (j) that had been passed in March 7, 2005.  The City through the Engineering Department, Solid Waste Services Department, sent letters to various companies informing them that they were in violation of "the City of Laredo Code of Ordinances, Chapter 14, Sec. 14-9 Rates (j): No person or entity, except a duly authorized agent or employee of the city, shall collect municipal or industrial solid waste on the streets, alleys and public thoroughfares of the city, or dispose of such municipal or industrial solid waste without a franchise agreement with the City of Laredo."  *(See Exhibit E)*  This ordinance was passed in violation of the City Charter and was an act of *ultra vires*.  Ordinance 2005-O-046, however, was not enforced despite the letter sent and the haulers continued to operate business as usual.

21.     For years, even after the passage of the franchise requirement, the City allowed Plaintiffs into the City landfill as evidenced by reports attached hereto as Exhibits K and L.  The City

had more than ample time and opportunities to enforce the franchise requirement if Plaintiffs were indeed in violation of the franchise requirement. However, the City chose not to enforce the Ordinance. Time and time again. Plaintiffs HPG Enterprises, Inc. and Mario Sanchez advised City Council that they were not a public utility company and as such the franchise requirement did not apply to them. In allowing Plaintiffs into the City landfill after the passage of the Ordinance, the City in fact acquiesced that Plaintiffs did not fall under the public utility category that required them to obtain a franchise. As a result of the City's acquiescence, the City granted Plaintiffs a right to enter the City landfill to dispose of c&d waste.

22.     In the present matter. Plaintiffs have not received a letter from the City advising them of any violation of the City of Laredo Code of Ordinances. The present Ordinance is worded exactly the same as the previous one except for the addition of "recyclables" through out it and adding the $500 penalty fee for violation of section 14.9(j).

23.     The language of the Ordinance is specific, but the City is disregarding the plain language of the Ordinance and it is being interpreted as the City, through its employees, sees fit. The Ordinance specifically itemizes "garbage, trash and recyclable materials" as the only items that would require a person or entity to obtain a franchise from the City.   Only two of those three items are defined in the Ordinance (garbage and recyclable materials).   Plaintiffs collect and transport construction and demolition waste, yet City officials and employees are denying entry to Plaintiffs' rolloff trucks to the City landfill claiming that the Ordinance encompasses all solid waste, including c&d waste, contrary to the Ordinance's specific and plain language and the Ordinance's own definitions and the definitions found in § 30 TAC 330.3 as regulated by the Texas Commission on Environmental Quality.

24.     The Ordinance fails to define "trash." The absence of guidance invites arbitrary enforcement of the Ordinance. The City claims that trash clearly encompasses all solid waste since it is defined in the Municipal Code.

25.     City employees are making separate classes of persons or entities that are or aren't included under the Ordinance giving rise to discrimination and inequality of application of the Ordinance. These classes are:

(a)     persons/entities hauling solid waste with utility trailers and pick-up trucks;

(b)     persons/entities hauling solid waste in rolloff trucks;

(c)     persons/entities hauling solid waste in end dump trailers or belly dump trailers;

26.     Plaintiffs, who haul solid waste in rolloff trucks, are turned around from the City landfill for not having a franchise. However, persons/entities hauling solid waste in utility trailers, pick-up trucks, or end dump trailers or belly dump trailers are allowed to enter the City landfill despite the Ordinance stating that "all persons or entities" hauling "garbage, trash or recyclable materials" must obtain a franchise.

27.     The Ordinance, for the first time, makes it a crime to collect, convey, transport, or dispose of garbage, trash and recyclable materials of another person or entity for a fee or profit if a person or entity does not have a franchise for a which a penalty of $500.00 will be imposed for each violation of section 14.9(j). *(See Exhibit A)*.

28.     Prior to filing of this lawsuit, Plaintiffs had not been issued citation or penalty for the alleged violations of the Ordinance. Plaintiffs were simply denied entry to the landfill by City's employees and were asked to hire legal counsel since their orders to deny them entry came from the "top." Plaintiffs were not provided with any written document instructing or authorizing the City's

employees to deny them entry into the landfill.   After filing of the this lawsuit, Plaintiff PedroPete Services, L.L.C. was served through the mail with citation no. 2705048 on February 12, 2015 for a stop that had occurred on December 24, 2014. *[See Exhibit F.]* To Plaintiffs' knowledge, since serving the citation on Plaintiff PedroPete Services, L.L.C., no other person or entity has been served with a citation by the City for violation of the franchise requirement under the Ordinance.

29.     By letter dated July 8, 2014, the City sent a veiled threat to  Mr. Roberto Trevino, Ponderosa Regional Landfill ("Ponderosa") c/o Southern Sanitation located in Webb County, Texas. The letter points out that it is in Ponderosa's interest not to allow Plaintiffs to dispose of waste into Ponderosa or  the City could consider another of Ponderosa's family business, Southern Sanitation, to be in violation of its franchise with the City. *(See Exhibit G).*  The City is over-reaching its power and interfering with Plaintiffs' right to conduct business by asking other businesses to enforce the Ordinance for the City.  Neither the City Charter or any Ordinance allow or grant the City the power and authority to deny entry to a person or entity into the City's landfill, nor do the City Charter or any Ordinance allow or grant authority to the City to petition and request a third party other than the Laredo Police Department to enforce an Ordinance.  Plaintiffs are being singled out for different treatment constituting a discriminating practice as the Ordinance states that persons or entities shall be issued a penalty for the franchise violation, not be denied entry into the landfill.

30.     The Ordinance has put a stop to the business activities relating to the collection and transportation of c&d waste and solid waste of Plaintiffs JRPG Enterprises, PedroPete Services, L.L.C. and Visa Services since Plaintiffs want to avoid criminal prosecution and fines and penalties. As a result, the Ordinance causes higher disposal costs being paid by customers and lower profits for Plaintiffs.  The harms and injuries faced by Plaintiffs are real and immediate.

COUNT 1

(42 U.S.C. § 1983: DUE PROCESS)

31.     The Plaintiffs re-allege paragraphs 1 through 30.

32.     Plaintiffs have the liberty to live and work where they will; to earn their livelihood by any lawful calling; and to pursue any livelihood or avocation. *Allgeyer v. Louisiana*, 165 U.S. 578 (1897). These liberties are "recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

33.     The City, as a home rule city, abides by the rights and grants given by the City Charter. In order to amend the Charter, the City has to follow Section 12.07 Charter Amendment which specifically states that amendments to the Charter may be framed and submitted to the voters of the City in the manner provided by Chapter 9 of the Local Government Code of Texas. *(See Exhibit H)*.

34.     Chapter 9 of the Local Government Code of Texas states that a proposed amendment by a municipality must be submitted to the municipality's qualified voters for their approval at an election. The municipality must submit a proposed amendment to the voters for their approval at an election *if* the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000 which ever is the smaller. The election shall be held on the first authorized uniform election dated prescribed by the Election Code or on the earlier of the date of the next municipal general election or presidential general election with sufficient time to comply with other requirements or law and must occur on or after the 30th day after the date of the ordinance ordering the election is adopted. *(See Exhibit I)*.

35.     The Ordinance violates the City's Charter as amended in 2010. The City's charter Section 8.02 provides that the City Council can grant franchises to public utilities. *(See Exhibit J)*.

36.     Plaintiffs are not a public utility company as defined in the Public Utility Regulatory Act, Title II, Texas Utilities Code §31.002 (6) and §51.002 (8).   Plaintiffs do not own or operate for compensation in this state equipment or facilities to produce, generate, transmit, distribute, sell, or furnish electricity in this state nor do they own or operate for compensation in this state equipment or facilities to convey, transmit, or receive communications over a telephone system as a dominant carrier.

37.     In layman's terms, public utilities are defined as businesses that provide the public with necessities, such as water, electricity, natural gas, and telephone and telegraph communication. Plaintiffs are not in the business of providing any of those necessities.

38.     The City, through its attorney, acknowledged  that Plaintiffs are not public utility companies at the pretrial conference scheduled before this Court on April 27, 2015 before Honorable Magistrate Judge Scott Hacker.

39.     The Doctrine of *Ultra Vires* precludes a City from engaging in a course of conduct that it is not specifically authorized to do so.  The members of the City Council who approved the Ordinance requiring that persons or entities that are non-public utilities obtain a City franchise acted in violation of the City's Charter section 8.02 which constitutes an *ultra vires* action and is void because it was entered without voter approval in violation of Section 12.09 of the City Charter and is in violation of the Texas Constitution.

40.     The substantive due course of the federal constitution protects citizens from arbitrary governmental action, regardless of the procedures used to implement it.  The City claims it has a

legitimate interest in requiring a franchise to upkeep and maintain the City's streets. By adopting the Ordinance, the City in effect is amending the City Charter to authorize the City to grant franchises to non-public utilities in direct violation of Section 12.07 of the Charter which states that to the amend the Charter it needs to be presented for vote to the municipality's qualified voters. Adoption of the Ordinance by the City has infringed upon Plaintiffs' right to vote for an amendment to the City's Charter and also infringed Plaintiffs from pursuing their right to earn a living through lawful means because they haul construction and demolition waste or solid waste in rolloff trucks without a franchise. The City's interest in the upkeep and maintenance of City's streets does not outweigh Plaintiffs' right to vote nor Plaintiffs' right to work and earn a living through lawful means and it is arbitrary and unreasonable with no substantial relation to the public health, safety, morals or general welfare of the City.

41.     The due process clause of the federal constitution protects citizens, including Plaintiffs, from being subject to an ordinance that the City never had the power to impose in connection with their property or business activities. The claimed interest by the City to upkeep and maintain the City's streets is not the reason given by the City Council to adopt section 14.9 (j) penalty violation of this Ordinance. The minutes of the City Council meeting clearly state that the reason to adopt the Ordinance was to prevent scavenging and pilfering of recyclables and to prohibit the unauthorized taking of recyclables set out for collection by the City.  *(See Exhibit A.)*

42.     When the City announced in the newspaper of general circulation its intent to pass this Ordinance, it stated that it intended to amend the Ordinance in place to prevent and prohibit scavenging and pilfering from the blue bins the City invested in. This publication did not give proper notice to Plaintiffs of the intent of the City to impose a franchise upon them nor that a penalty

would be assessed against them for violation of a franchise that, according to State law, does not pertain to them. The minutes of the City Council meeting also show that the intent of the council in requesting a penalty be imposed was to be imposed upon the people found to be scavenging from the blue bins not Plaintiffs or franchisees. It did not provide proper notice to Plaintiffs that a franchise requirement would be assessed to them since they don't deal with garbage, trash or recyclable materials as those items are defined in § 30 TAC 330.3.

43. In addition, the City acknowledges that the Ordinance follows the definitions as prescribed by § 30 TAC 330.3 as it mentions this section in the Ordinance: *"Sec. 14.9 (j) Franchise required for collector other than the city...do discharge municipal solid waste and industrial solid waste and recyclable materials as defined in 30 TAC 330.3".* If the City intended for construction and demolition waste to be included in the franchise requirement it knew that it had to add the term "construction and demolition waste" as it is defined in § 30 TAC 330.3(33) as required by State law.

44. Because the City in adopting the Ordinance acted without the authority to do so and without proper notice to Plaintiffs, it has violated the federal due process clause and 42 U.S.C. § 1983 and the Ordinance is void and unenforceable.

COUNT 2

(DUE COURSE OF LAW CLAUSE)

45. The Plaintiffs re-allege paragraphs 1 through 30.

46. Until the passage of the Ordinance, Plaintiffs had a vested right to enter the City Landfill to dispose of construction and demolition debris as conferred by the City of Laredo Ordinance Chapter 14, Section 14.9 (h) which states in part as follows:

"(h) Landfill Fees. All household and commercial garbage, rubbish, refuse, trash,

yard waste, **construction demolition debris**, sludge from wastewater treatment plant, water treatment plant, class II and III nonhazardous industrial waste, special waste approved by the commission, and other putrescible and nonputrescible waste which **may be disposed of by any person** shall not be improperly disposed of at any place within the city limits thereof except as such sites as may be designated by the director of solid waste services. **Persons desiring to dispose of such solid waste** at one (1) of the city's sanitary landfill **shall pay** the following fees for each vehicle load entering at the landfill:"

47.     Plaintiff HPG Enterprises, Inc. has acted on this vested right granted by the Ordinance to dispose of all construction and demolition waste at the City landfill by paying the requisite landfill fees since the year 1989.  *(See Exhibit K)*.  The Ordinance clearly states that the franchise requirement is for those persons who haul garbage, trash and recyclable materials from others for a profit.  Although HPG hauls its own construction and demolition waste, the City through its solid waste management employees, Mr. Alejandro Benavides, Mr. Ernesto Elizondo and Mr. Stephen Geiss on June 3, 2014 denied entry to HPG to the City landfill allegedly because it was in violation of the Ordinance franchise requirement.  The Ordinance clearly states that the City can impose a penalty for the violation of section 14.9(j), however, it does not state that the City can deny entry to the City landfill to any person or entity who is in violation of that section.

48.     Plaintiffs Mario Sanchez and PedroPete Services have also acted on their vested right by the Ordinance to dispose of all construction and demolition waste at the City landfill by paying the requisite fees.  *(See Exhibit L)*.

49.     The State of Texas issued the landfill permits for the City of Laredo through the Texas Commission on Environmental Quality ("TCEQ") § 30 TAC 330.1.  As such, the City landfill is regulated by State law and not by the City.

50.     § 30 TAC 330.3(33) defines construction and demolition waste as waste resulting

from construction or demolition projects; includes all materials that are directly or indirectly the by-products of construction work or that result from demolition of buildings and other structures; including, but not limited to, paper, cartons, gypsum board, wood, excelsior, rubber, and plastics.

51.     § 30 TAC 330.3(160) defines trash being the same as Rubbish which is defined in § 30 TAC 330.3(130) as being non-putrescible solid waste (excluding ashes), consisting of both combustible and noncombustible waste materials.   Combustible rubbish includes paper, rags, cartons, wood, excelsior, furniture, rubber, plastics, brush, or similar materials; noncombustible rubbish includes glass, crockery, tin cans, aluminum cans, and similar materials that will not burn at ordinary incinerator temperatures (1,600 degrees Fahrenheit to 1,800 degrees Fahrenheit).

52.     The City attempts to use trash as a "catch all" word to include construction and demolition waste in the Ordinance.  This action goes against the established definitions of the State as regulated by the TCEQ and § 30 TAC 330.3.  The City is preempted by state law with respect to the definitions it imposes on the materials to be disposed of at the City landfill.

53.     Council Member Narvaez put it plain and simple when he stated that the City had lost $3 million dollars in the blue recyclable containers and he wanted to protect that investment when he moved to pass the Ordinance.  Not once did Council Member Narvaez mentioned the franchise requirement nor that franchisees would be held accountable for the actions of those  people found scavenging from the blue bins. *(See Exhibit B.)*

54.     The intent of the City Council in adopting the Ordinance's penalty violation was to prevent and prohibit scavenging and pilfering from the blue bins the City invested in.  This can clearly be interpreted that the Council intended for people who were found to be scavenging from the blue bins to be fined and assessed a penalty for their actions.  Plaintiffs do not own any blue

recyclable containers like those the City invested in that people could associate as containing aluminum or other "things of value" as Council Member Narvaez said.  There is no rational interest between preventing and prohibiting scavenging recyclables from the blue bins and assessing a penalty for violation of the franchise requirement.  What the Council moved to pass in the ordinance is completely opposite from the Ordinance they ultimately signed.

55.     The Ordinance does not address any of the environmental or health or safety concerns historically or currently associated with solid waste in Laredo.  The Ordinance does not address any general welfare concerns of Laredo residents.  It is not an exercise of the police power.

56.     If it is not to address any of the environmental or health or safety concerns associated with solid waste then it follows that the purpose of the Ordinance is to raise revenue.  The City's taxing power is the only way that the City can raise revenue.  The City's taxing power, however, does not authorize directing that all solid waste generated, found or located in the City be disposed of at City owned or City operated facilities to raise revenue.

57.     Citizens, including Plaintiffs, are protected under the due process clause of the federal constitution and the Due Course of Law Clause under the State constitution from being subject to an Ordinance that the City never had the power to impose in connection with their property or business activities.

58.     Plaintiffs were not afforded proper notice to appear before the Council to express their concerns nor objections to the passing of such Ordinance as the notice published in the newspaper of general circulation did not properly give notice to Plaintiffs that a franchise requirement would be assessed to them for people found to be scavenging and pilfering of the blue bins nor that a penalty would be assessed to them for violation of a franchise requirement for garbage, trash or

recyclable materials as Plaintiffs do not deal with such materials as defined in § 30 TAC 330.3 and regulated under the TCEQ.

59.     The City acted without authority in adopting the Ordinance and it has violated the federal due process clause, the Due Course of Law Clause of the Texas constitution and 42 U.S.C. § 1983, therefore, the Ordinance is void and unenforceable.

COUNT 3

60.     Plaintiffs re-allege paragraphs 1 through 30.

61.     The City is discriminating against companies that provide rolloff truck with dumpsters by denying these entities access to the City landfill while allowing other persons or entities in their utility trailers, pick-up trucks, end dumps or belly dumps with the same type of c&d waste.  The language of the Ordinance invites arbitrary and discriminatory actions by the City's employees by enforcing such Ordinance differently towards different classes of persons or entities.

62.     The City and its employees and officials, acting under color of state law within the meaning of 42 U.S.C. §1983, deprived Plaintiffs of rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution.

63.     As such, Plaintiffs were intentionally treated differently from others similarly situated, e.g. persons/entities allowed into the City owned landfill with their utility trailers, end dump trailers or belly dump trailers with c&d waste.  Specifically, the City allowed the following persons and/or entities to enter the City Landfill with a franchise:  Rubios Development [Rolloff Truck], J& J Insulation [Rolloff Truck], Daniel A. Sandoval Riojas [Small Dump trailers], Sun Control Systems [Pickup Truck with Rolloff Trailer], Wilkinson Gary Iron and Metal [Rolloff Trucks], Glen Sat Co. Inc. [Small Trash Trailers], Aleskar M. Villarreal [14 Yd Tandem Dump Truck], Mario Castilleja

[14 Yd Tandem Dump Truck], and Sergio Eduardo Vela [14 Yd Tandem Dump Truck], *(See Exhibit M)*. All these persons or entities haul solid waste material for others in the City of Laredo for a profit.

64.     After having been cited for being in violation of the franchise requirement under the Ordinance, Plaintiff PedroPete Services, L.L.C. was denied entrance to the City landfill when attempting to enter with the rolloff trucks. Despite this, Plaintiff PedroPete Services, L.L.C. has entered the City landfill when driving in with his utility truck. *(See Exhibit L)*. Clearly, the City is making a distinction of when Plaintiff PedroPete, L.L.C. uses his rolloff trucks than when he uses his utility trailer to enter the City landfill.

65.     The City has contract (FY 12094) with Rafter P. Transport Inc. to load and haul wastewater bio-solids (considered solid waste under § 30 TAC 330.3 (145)) from the Southside Wastewater Treatment Plant to San Antonio and Maverick County; a contract (FY 15022) with Rafter P. Transport, Inc. to load and haul dry sludge (considered solid waste under § 30 TAC 330.3(143)) from El Pico Water Treatment Plant to the City of Laredo Landfill; and, a contract (FY 14-044) with Rafter P. Transport Inc. to load and haul dry sludge (considered solid waste under § 30 TAC 330.3(143) from the Jefferson Water Treatment Plant to the City of Laredo Landfill. *(See Exhibit N)*.

66.     Rafter P. Transport, Inc. has not been identified by the City of Laredo to be in possession of a franchise as per the Ordinance and therefore is in violation of the Ordinance franchise requirement since it is hauling solid waste belonging to the City of Laredo on the streets of the City of Laredo for profit.

67.     The City's franchise requirement to further the legitimate interest in the upkeep and

maintenance of City's streets is not rationally served by the distinctions the City makes between those who collect and transport solid waste in rolloff trucks, those who collect and transport solid waste in other types of vehicles, and/or those whose business requires the use of City's streets. More important, the City is not requiring a franchise for a business that hauls the City's own solid waste for a profit.

68.     The Ordinance violates the Equal Protection Clause of the Fourteenth Amendment of the federal constitution and is void and unenforceable.

## COUNT 4 - ATTORNEY'S FEES

69.     Plaintiffs re-allege paragraphs 1 through 68.

70.     Pursuant to 42 U.S.C. § 1988 the Plaintiffs are entitled to and request judgment against the City for Plaintiffs' reasonable attorney's fees incurred in bringing this action.

## PRELIMINARY INJUNCTIVE RELIEF

71.     Plaintiffs re-allege paragraphs 1 through 70.

72.     There is a substantial likelihood the Plaintiffs will succeed on the merits of its claims.

73.     The relief sought is essential to prevent interference with the constitutional and statutory rights of the Plaintiffs. Unless the relief sought is granted, Plaintiffs will suffer irreparable injury in that it will be forced to comply with an Ordinance that is unconstitutional and is otherwise illegal by significantly changing their business activities and business conduct as it relates to the collection and transportation of c&d waste, solid waste and recycling activities or face criminal fines and penalties.

74.     The Plaintiffs' injuries outweigh any harm that will result if a preliminary injunction is granted as there will be no such harm.

75.    Granting a preliminary injunction will not disserve the public interest.

76.    Granting the relief requested maintains the status quo.

PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that the City be cited to appear and answer and after appropriate proceedings the Court order the following relief:

(a)    find and declare that the Ordinance is void as an unauthorized, *ultra vires* action of the City in violation of City Charter Section 8.02;

(b)    find and declare that the Ordinance is not an exercise of the City's police powers, exceeds the City's police powers or is not necessary or reasonable to achieve a public concern that is important and legitimate and as such violates the due process and is void;

(b)    find and declare the Ordinance is inconsistent with Texas statutes and is void;

(c)    find and declare the application of the Ordinance depends on an unconstitutional delegation of the City's legislative powers and is void;

(d)    preliminarily and permanently enjoin the City from enforcing the Ordinance;

(e)    award the Plaintiffs' their attorney's fees necessarily and reasonably incurred in bringing this action;

(f)    award Plaintiffs their costs of court; and,

(g)    provide for such other and further relief at law and in equity to which the Plaintiffs may be justly entitled.

JURY DEMAND

The Plaintiffs hereby requests a trial by jury of issues raised by this Complaint that are triable

to a jury.

Respectfully submitted,


BY: _____
       Maria Elena Morales
       State Bar No. 14419200
       Federal Bar No. 5177

THE LAW OFFICE OF MARIA ELENA MORALES
1514 Victoria, Suite 1
Laredo, TX 78040
Tel: (956) 723-5031
Fax: (956) 726-3715
ATTORNEY FOR PLAINTIFFS,
HPG  ENTERPRISES  AND  VISA  SERVICES

LAW OFFICE OF MARILU CANTU, PLLC
1919 Chihuahua St.
Laredo, TX 78043
Tel: (956) 523-0523
Fax: (956) 523-0523
ATTORNEY FOR PLAINTIFF,
PEDROPETE SERVICES, L.L.C.